SOUTHERN RAILWAY COMPANY v. DEWEY LISSENBEE.

(Filed 19 March, 1941.)

**1. Railroads § 2—Railroad right of way may be acquired by statutory presumption.**

A right of way for railroad purposes may be acquired by statutory presumption, and evidence tending to show that plaintiff railroad company was successor to the Western North Carolina Railroad Company which

R. R. *v.* LISSENBEE.

constructed its tracks over the lands of defendant, that the tracks had been in continuous use, and further that the right of way was not acquired by purchase or condemnation, *is held* sufficient to be submitted to the jury on the question of plaintiff's acquisition of an easement for 100 feet on either side of the center of its tracks under the statutory presumption of a grant from the owner of the land (Private Laws of 1854-55, ch. 228, sec. 29).

**2. Same—**

The statutory presumption of a grant of land for a railroad right of way arises only in the absence of contract in relation to the land through which the railroad may pass, and the burden is upon the party claiming the benefit of such presumption to show every fact out of which it arises.

**3. Same—**

When a railroad company acquires a right of way for railroad purposes it may be occupied and used by the railroad company to its full extent, and the railroad company is the judge of the extent of use necessary for the proper operation of its trains and may enjoin the owner of the land from interfering from a proper increase in the use of the easement.

**4. Same—**

The fact that shortly after tracks are laid they are relocated does not affect the acquisition of an easement along the relocated tracks by statutory presumption, since the relocation is under authority of the company's charter giving rise to the statutory presumption of a grant after the expiration of the time prescribed.

APPEAL by defendant from *Armstrong, J.*, at September Term, 1940, of MADISON.

Civil action to require defendant to remove obstruction on and around, and restraining him from interfering with electrical signal and switching system of plaintiff allegedly located on its right of way.

These pertinent facts appear to be uncontroverted. Plaintiff has a line of railroad running generally east and west through the town of Marshall in Madison County, North Carolina. In said town there is a street, referred to in defendant's answer and in the issues, as Lower Bridge Street, which runs south from Main Street at or near the courthouse yard to and over the railroad, and then to and across the French Broad River. Defendant owns, subject to the railroad right of way of plaintiff, a lot of land which lies on the west side of Lower Bridge Street and extends from a point north of the railroad to the French Broad River on the south thereof. In connection with the operation of its trains over the track of said railroad, plaintiff has installed and operates an automatic electrical signal and switching system. Also, in connection with said system and for the purpose of indicating to those traveling upon Lower Bridge Street the approach of train on said railroad, plaintiff has installed on the north side of the railroad and on the west edge of said street, and at said intersection, and within the boundaries of the

said lot of defendant, an automatic electrical signal system. As a part thereof and auxiliary thereto, plaintiff has built a cement box and installed therein wet batteries with relay boxes attached to post above so that in the event the electric power which operates the crossing signal shall fail, the batteries automatically cut in and govern the crossing signal. This battery box, as defendant avers, "extends into the defendant's property about fifteen feet from the center of its (plaintiff's) track." Defendant has covered the box and the batteries with sand, which interferes with maintenance of the system. Upon the trial below, "It is conceded by defendant that the plaintiff . . . is the successor to and stands in the same position as to the property in question as The Western North Carolina Railway (Railroad) Company."

Plaintiff offered in evidence chapter 228 of the Private Laws of the General Assembly of North Carolina 1854-55, entitled, "An Act to Incorporate the Western North Carolina Railroad Company," and especially section 29 thereof relating to acquisition of right of way. Plaintiff contends that under the charter of the Western North Carolina Railroad Company, it has by statutory presumption a right of way one hundred feet in width on each side of the center line of its railroad track, over the property of defendant. On the other hand, defendant contends that as the railroad crosses his lot of land, it is built on a rock wall, and that the right of way or easement of the plaintiff is limited to "the width of the rock wall" upon which the track is situated.

Plaintiff further offered evidence tending to show that the railroad as now located through the town of Marshall and over the property in question was constructed in the year 1896, and has been since operated continuously; that it runs along the north side of and close to the French Broad River on a rock wall; that when the railroad was first constructed through said town about the year 1882 or 1883 it "ran through the middle of the street (Main Street) for about a year"; that this first location was "just a short distance north of where it is now located"; that "then they built a pine pole trestle between the street where the track was originally located and where it is now located," and along the north side of and by its present location over the property in question, and operated the railroad there for eight or ten years; that "the pine pole trestle started at the depot, which is a block or two east of the property in question and kept getting closer to the present location until it got down to the Lissenbee property in question, and then ran across the same immediately north of its present location."

Plaintiff further offered evidence tending to show defendant's chain of title to property in question connectedly from 1866 to date; also, that a search of the records of deeds and other instruments required to be registered in the office of the register of deeds of Madison County, and

a further search in the office and files of plaintiff in Washington, D. C., by officer in charge of files of the contracts and deeds of the company, fail to show that the Western North Carolina Railroad Company and its successor, the plaintiff, "received any conveyances or contracts for right of way over the property in question"; and that "there have never been any condemnation proceedings covering this property."

Plaintiff further offered evidence tending to show that the battery box in question was required for the signal system at the crossing.

The record shows that these four issues were submitted to and answered by the jury:

"1. Is the plaintiff the owner of a right of way on either side of its main line as same runs through the property of the defendant on the west side of Lower Bridge Street in the Town of Marshall, N. C., as alleged in the complaint? Answer: 'Yes.'

"2. If so, what is the width of same on each side of the center of the railway track of the plaintiff? Answer: 'Yes, 100 feet on each side of the center of the plaintiff's railway track, said right to exist so long as said property shall be necessary for railway purposes, and used for said purposes and no longer.'

"3. Has the defendant wrongfully entered upon said right of way and wrongfully interfered with the rights of the plaintiff on that part of said right of way upon which plaintiff's signal box and signal system is located? Answer: 'Yes.'

"4. What damage, if any, is the defendant entitled to recover of the plaintiff, as alleged in defendant's counterclaim? Answer: 'Nothing.' "

However, plaintiff has filed with the clerk of this Court a certified copy of the judgment incorporating the issues as submitted, showing that only the first and third were actually submitted, and answered by the jury.

Upon the verdict as rendered the court below adjudged that "plaintiff, under authority of chapter 228, section 29, of the Private Acts of 1854-1855, is the owner of an easement or right of way one hundred feet in width, on either side of the center of main line of the plaintiff, as the same runs through and across the lands of the defendant, with all the rights and privileges conferred by chapter 228 of the Private Acts of 1854-55, and subject to the limitations therein contained," and granted the injunctive relief prayed by plaintiff.

Defendant appeals to Supreme Court and assigns error.

*W. T. Joyner and Jones, Ward & Jones for plaintiff, appellee.*
*John H. McElroy for defendant, appellant.*

11—219

WINBORNE, J.   This is the determinative question on this appeal: Under the charter of the Western North Carolina Railroad Company (Private Laws 1854-55, chapter 228, section 29) may right of way for railroad purposes be acquired by statutory presumption?   Upon the evidence in this case, appellant says "No," and, in that view, challenges the ruling of the court in refusing to grant his motions, aptly made, for judgment as in case of nonsuit.   However, the ruling finds uniform support in the decisions of this Court.

The charter of the Western North Carolina Railroad Company, under which as amended the railroad along the French Broad River through the town of Marshall in the State of North Carolina was located and constructed and has been since operated, provides three methods by which the right of way for the railroad may be acquired:  (1) By purchase, section 27;  (2) by condemnation, section 29;  (3) by statutory presumption, under the further provisions of section 29, that "in the absence of any contract or contracts in relation to lands through which said road may pass, it shall be presumed that the land over which said road may be constructed, together with one hundred feet on each side thereof, has been granted by the owner or owners to the company, and the said company shall have good right and title thereto, and shall have, hold and enjoy the same so long as it shall be used for the purposes of said road, and no longer, unless the owner or owners shall apply for an assessment of the value of said lands as hereinbefore directed, within two years next after that part of said road has been located; and in case the owner or owners of such lands or those claiming under him, her or them shall not apply within two years from the time aforesaid, he, she, or they shall be forever barred from recovering the same or having an assessment or compensation therefor."

Provisions of similar character and like effect, to this quoted portion of section 29, appearing in the charters granted by the General Assembly to other railroad companies in the early era of railroad building in North Carolina have been considered in numerous decisions of this Court, among which are these: *Vinson v. R. R.,* 74 N. C., 510; *R. R. v. Mc-Caskill,* 94 N. C., 746; *R. R. v. Sturgeon,* 120 N. C., 225, 26 S. E., 797; *Dargan v. R. R.,* 131 N. C., 623, 42 S. E., 979; *Barker v. R. R.,* 137 N. C., 214, 49 S. E., 115; *R. R. v. Olive,* 142 N. C., 257, 55 S. E., 263; *Earnhardt v. R. R.,* 157 N. C., 358, 72 S. E., 1062.

The tenor of these decisions is expressed in *Barker v. R. R., supra,* in this manner: "This mode of acquisition is not an exercise of the right of eminent domain; it is based upon a purely statutory presumption. The concurring conditions are (1) entry and construction of the road, and (2) the failure of the owner to prosecute an action for two years. These concurring conditions existing, the statute fixes the term of two

years within which the owner may prosecute his action, and in default of which the road acquires the easement described, to wit: '100 feet on each side of the center of the road' with the limitation fixed as to time and use."

Again, in *Earnhardt v. R. R., supra,* it is said: "The effect of inaction on the part of the owner for a period of two years after the completion of the road has been considered in several cases in this Court, under charters similar to the one before us, and without difference of opinion, ·it has been held that under such circumstances, a presumption of a grant from the owner arises for the land on which the road is located and for the right of way provided for in the charter."

This presumption, however, only arises in the absence of contract in relation to the lands through which the railroad may pass. Hence, the burden is upon the party claiming the benefit of such presumption to show every fact out of which it arises. *Barker v. R. R., supra.*

"Our decisions are to the effect that a railroad right of way when once acquired may be occupied and used by the company to its full extent, whenever the proper management and business necessities of the road may so require, and the company is made the judge of such necessity." *R. R. v. Bunting,* 168 N. C., 579, 84 S. E., 1009; *R. R. v. McLean,* 158 N. C., 498, 74 S. E., 461; *Earnhardt v. R. R., supra; R. R. v. Olive, supra.*

Applying these principles to the case in hand, the evidence shown in the record is sufficient to take the case to the jury upon the issues submitted and to support the verdict rendered thereon.

Moreover, the fact that the present location of the railroad, constructed in the year 1896 over the land in question, does not coincide with the location as originally made is, in the light of the evidence, immaterial. It is not contended that the present location is not by virtue and under authority of the provisions of the charter of the Western North Carolina Railroad Company. Hence, while a change in exact location of the roadbed might have subjected the company to liability for additional right of way, such additional right of way could have been acquired in any of the three methods provided in the charter. The evidence tends to show that the right of way was not acquired either by purchase or by condemnation, and that sufficient time has long since elapsed for acquiring it by statutory presumption.

Upon the record presented, there is, in the judgment below,

No error.